**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

JSMFP XII, LLC, a Florida limited liability
company, and JSMFP, LLLP, a Florida
limited liability limited partnership,

               Plaintiffs,

v.

DIAMOND BRITE CAR CARE, LLC, a
Connecticut limited liability company; FLEX
AUTOMOTIVE HOLDINGS, INC., a
Florida corporation; FLEX AUTO
RENTALS, LLC, a Florida limited liability
company; and CORRADO VACCARO a/k/a
COREY CHOMKO, an individual,

               Defendants.

_____/

**COMPLAINT FOR DAMAGES**

Plaintiffs, JSMFP XII, LLC and JSMFP, LLLP (collectively "Plaintiffs"), by and through

undersigned counsel, bring this action against Defendants Diamond Brite Car Care, LLC, Flex

Automotive Holdings, Inc., Flex Auto Rentals, LLC, and Corrado Vaccaro a/k/a Corey Chomko

(collectively, "Defendants"), jointly and severally for damages and states:

**PARTIES**

1.      At all relevant times, JSMFP, LLLP ("JSMFP") was and is a limited liability

limited partnership duly existing and organized under the laws of the State of Florida, with its

principal office in Miami-Dade County, Florida.

2.      At all relevant times, JSMFP XII, LLC ("JSMFP XII") was and is a limited liability

company duly existing and organized under the laws of the State of Florida, with its principal

office in Miami-Dade County, Florida.  JSMFP is a Member of JSMFP XII.

3.      At all relevant times, Spectrum Business Ventures, Inc. ("SBV") was the Manager of JSMFP XII and an authorized representative of JSMFP.

4.      Defendant, Corrado Vaccaro aka Corey Chomko ("Vaccaro"), is an individual residing in Miami-Dade County, Florida.

5.      Defendant, Flex Automotive Holdings, Inc. ("Flex Holdings"), is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

6.      Defendant, Flex Auto Rentals, LLC ("Flex Rentals"), is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Vaccaro is the Manager of Flex Rentals and is its registered agent in Florida.

7.      Defendant, Diamond Brite Car Care, LLC ("Diamond Brite"), is a Connecticut limited liability company. Upon information and belief, Diamond Brite does business in Miami-Dade County, Florida, and Vaccaro is a member and manager of Diamond Brite.

8.      At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the other Defendants.

9.      In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common scheme, pattern or course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

10.     Each of the Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the

2

wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.  Thus, Defendants are jointly and severally liable for the wrongful conduct set forth herein because they are aiding and abetting each other and/or conspired to commit such wrongful conduct.

## JURISDICTION AND VENUE

11.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. This Court also has jurisdiction over this matter pursuant to 18 U.S.C. § 1964(c), which provides that any person injured in their business or property by reason of a violation of 18 U.S.C. § 1962 may sue in any appropriate United States district court. This Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal RICO claims that they form part of the same case or controversy.

12.	Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a)–(b) because Vaccaro resides in this district, Diamond Brite, Flex Holdings, and Flex Rentals are entities that are deemed to reside in any judicial district where their contacts would be sufficient to subject them to personal jurisdiction, and the acts complained of herein and the resulting harm occurred in Miami, Florida.

13.	This Court has personal jurisdiction over each Defendant because they reside here or regularly conduct business here, and the wrongs complained of occurred in Miami, Florida.  In addition, the Defendants entered into written contracts that contain forum selection clauses,

3

choosing Miami-Dade County, Florida as the exclusive venue for any claims arising under or in connection with the contracts and consenting to jurisdiction here.

## INTRODUCTION

14.     Plaintiffs seek damages for, among other things, fraud and violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO"), 18 U.S.C. §1961 *et seq.*, all arising out of a scheme devised, conducted and/or participated in by Defendants, through a pattern of racketeering activity, to wrongfully and unlawfully obtain money from Plaintiffs based on lies and deception, including pledging and/or selling stolen property or property that does not exist. As set forth below, Vaccaro has a storied criminal history. Plaintiffs appear to be Vaccaro's latest victims.

15.     Specifically, Defendants participated in a wrongful enterprise engaged in a scheme to defraud and wrongfully induce Plaintiffs and other persons into loaning millions of dollars to Defendants or their affiliates with collateral that either does not exist or that Defendants do not lawfully own.

16.     As part of their unlawful scheme, Defendants fraudulently induced JSMFP XII to loan them $1,250,000 supposedly "secured" by several luxury automobiles that Plaintiffs recently learned might be stolen and/or that Defendants do not lawfully own and could not lawfully pledge and/or suffer from title irregularities, unlawful VIN tampering, and unlawful odometer tampering.

17.     Defendants subsequently defaulted on the JSMFP XII loan, and JSMFP has accelerated that debt. JSMFP XII seeks to recover from Defendants all amounts due and owing on the written promissory note.

18.     As a separate part of their unlawful scheme, Defendants also fraudulently

induced JSMFP to loan them $70,000 supposedly secured by a boat that Defendants purportedly owned. When Defendants could not repay that loan, they signed the title of the boat over to JSMFP, purportedly conveying the boat to JSMFP. However, JSMFP has recently learned that Defendants sold JSMFP a bill of goods—that boat does not appear to exist.

19.     Plaintiffs seek a monetary judgment against Defendants for all amounts due and owing on the loans made to Defendants, compensatory and punitive damages for Defendants' fraud, treble damages under Federal RICO, costs of suit, and Plaintiffs' attorneys' fees.

## FACTUAL ALLEGATIONS

### Vaccaro is a Career Criminal

20.     Vaccaro has used at least one other name—Corey Chomko—and he has apparently run from that name to avoid his criminal history, bankruptcies and adverse consequences that flow from his extensive rap sheet.

21.     Since 1997, Vaccaro has been arrested and charged with many crimes and convicted of most of them. Among other things:

a. In July of 1997, he was charged with possession of marijuana, use of drug paraphernalia, and carrying a pistol with no permit in Hartford, Connecticut;

b. In June of 1998, he was convicted of sale of a controlled substance in Hartford, Connecticut, and was sentenced to five years with a suspended sentence and probation;

c. In June of 1998, he was convicted of possession of two pounds of marijuana in Hartford, Connecticut and was sentenced to one year in jail with a suspended sentence and three years of probation;

d. In November of 1998, he pleaded nolo contendere to the felony charge of delivery of a schedule I/II controlled substance in Newport;

e.  On July 6, 2007, he was convicted of identity theft, first degree larceny, criminal impersonation, issuing a bad check, receiving goods or services by illegal use of a credit card, and second degree forgery in Hartford, Connecticut for at least five separate offenses that occurred between July 1999 and September 2005, and was sentenced to five years in prison, and his previous probation was terminated;

f.  In April of 2013, he was again convicted of possession of marijuana in Hartford, Connecticut, receiving a suspended one-year jail term and one year of probation;

g.   In June 2020, he was charged with using a dealer registration for a vessel other than intended, an unauthorized number display, and an expired vessel registration in Miami-Dade County, Florida, and was placed in the deferred prosecution program; and

h.  On August 3, 2022, he was charged with battery and disorderly conduct in connection with a brawl in Miami-Dade County, Florida.

22.  Plaintiffs were unaware that Vaccaro had a criminal history, or that he had previously been charged and convicted for any crimes, including, importantly, identity theft and larceny.

**Vaccaro Scams Plaintiffs and their Affiliates**

23.  In or about March of 2024, Vaccaro approached one of Plaintiffs' representatives, through SBV, to solicit a business loan for a business venture involving the acquisition and resale of luxury automobiles.  At that time, Vaccaro advised SBV that he was looking for a large, interest-only loan with a balloon payment; he preferred not to use a bank or other traditional lender; that he was willing to pay a higher rate of interest on a private loan; and that he would secure repayment of the loan with liens on titles to several vehicles that he or his affiliates owned.

24.  Based upon Vaccaro's business plan, financial statements, and other information

and documentation provided, Plaintiffs believed that Vaccaro's business was valid and that the rate of interest that Vaccaro was willing to pay for a loan was a good financial investment for Plaintiffs. Neither SBV nor Plaintiffs were aware of Vaccaro's criminal history or his rap sheet.

25.     During these discussions in March 2024, Plaintiffs sought assurances from Vaccaro, and Vaccaro expressly represented and promised that he would only use the loan proceeds for the specific purpose of acquiring luxury vehicles for resale by his company, Flex Holdings. Vaccaro also promised that he would provide substantial collateral for the loan.

26.     Based on these representations and promises, JSMFP agreed to loan $500,000 to Flex Holdings and Vaccaro through a one-year interest-only loan, which was supposed to be collateralized by vehicles owned by Flex Holdings and/or Vaccaro.

27.     On April 1, 2024, JSMFP loaned Flex Holdings and Vaccaro $500,000 and funded that loan through a wire transfer to Flex Holdings' bank account at Bank of America.  A true and correct copy of the confirmation of that wire transfer is attached as **Exhibit 1**. At that time, Vaccaro provided to SBV/JSMFP collateral for the loan by recording a lien on titles to vehicles supposedly owned by Vaccaro and/or Flex Holdings, reflecting SBV as the lienholder.

28.     When the JSMFP loan matured on April 1, 2025, Vaccaro sought to roll the $500,000 principal balance then due and owing into a new loan with a total principal balance of $1,250,000. At that time, Vaccaro admitted that neither he nor Flex Holdings owned the vehicles that comprised collateral for the loan, and he proposed that Diamond Brite and Flex Rentals be added as borrowers as they actually owned the vehicles.

29.     Between April 1, 2025 and July 1, 2025, Vaccaro and Plaintiffs' representative had several discussions about a new loan. Vaccaro told Plaintiffs that he wanted to substantially expand his luxury automobile resale business. Plaintiffs were aware through discussions with

7

Vaccaro that Vaccaro was involved in or was exploring other ventures, including car rentals, boat rentals, airplane rentals, and bonding. Accordingly, Plaintiffs sought assurances from Vaccaro that he had not used the $500,000 borrowed in April 2024 for any purpose other than acquiring luxury automobiles for resale and that Defendants would not use the additional $750,000 loan proceeds for any other purpose.

30.     On or about July 1, 2025, Vaccaro verbally told Plaintiffs' representative that he had not used the $500,000 for any purpose other than acquiring cars for resale. During those discussions, Vaccaro promised Plaintiffs that Defendants would not use any portion of the $750,000 additional principal loaned to them for any purpose other than acquiring luxury cars for resale, and that Defendants would overcollateralize the loan by adding Plaintiffs as lienholders to additional cars owned by Defendants to reach an aggregate liquidation value of such collateral of $2,000,000.

31.     Based upon these representations and promises, Plaintiffs agreed to make the loan to Defendants.

32.     On July 1, 2025, JSMFP assigned to JSMFP XII all of JSMFP's rights, title and interest in the April 1, 2024 promissory note and security from Flex Holdings and Vaccaro; and SBV assigned to JSMFP XII all rights, title and interest that SBV had as a lienholder to the Collateral Vehicles.

33.     On July 1, 2025, JSMFP XII entered into a Loan Agreement with Defendants, whereby JSMFP XII agreed to make a business loan to Defendants in the principal amount of $1,250,000.  A true and correct copy of the Loan Agreement is attached as **Exhibit 2**.

34.     On July 1, 2025, in accordance with the Loan Agreement, Defendants executed a Secured Promissory Note in favor of JSMFP XII in the principal amount of $1,250,000 (the

"Note").  A true and correct copy of the Note is attached as **Exhibit 3**.

35.     The Note provides that the Maturity Date is June 30, 2027; the Note bears interest at the rate of twenty percent (20%) per annum, computed based on a 365-day year; and that Defendants shall make interest only payments on the Note in the amount of $20,833.33 per month, beginning on August 1, 2025, and continuing until the Maturity Date, at which time the entire principal balance plus all accrued and unpaid interest, would be paid. *See* Ex. 3.

36.     The Note further provides that "Borrower shall pay all costs and expenses incurred by Lender in processing and collecting sums due under this Note after an Event of Default, including reasonable attorneys', witnesses', and court fees (whether or not legal proceedings are initiated) . . . ." Ex. 3, ¶6.

37.     As security for repayment of the Note, Defendants granted JSMFP XII a security interest in personal property supposedly owned by Defendants, namely, luxury vehicles that Defendants represented to Plaintiffs that Defendants lawfully owned with an aggregate wholesale/liquidation value of $2,000,000 (the "Collateral Vehicles"). *See* Ex. 2 ¶ 3; Ex. 3 ¶ 3. Specifically, Defendants delivered to SBV/JSMFP Certificates of Title to the Collateral Vehicles, identified on **Exhibit 4** attached hereto, each of which purport to reflect one of the Defendants as the owner and SBV/JSMFP XII as the lienholder to the vehicle.

38.     On July 1, 2025, JSMFP XII fully funded the $750,000 additional principal amount of the loan via wire transfer to Flex Rental's bank account at JPMorgan Chase.  A true and correct copy of the confirmation of that wire transfer is attached as **Exhibit 5**.

**Defendants Default on the Note and Admit their Fraud**

39.     Defendants thereafter defaulted on the Note in material respects.  Specifically:

    a.   Defendants did not deliver Certificates of Title to vehicles lawfully owned by

9

Defendants and recording JSMFP XII as lienholder with an aggregate liquidation value of $2,000,000—Defendants sent titles to vehicles that Defendants did not lawfully own, and those titles, even if valid, had a substantially lower aggregate value;

b.   Vaccaro admitted in verbal conversations with Plaintiffs' representative in or about the fall of 2025 that he had not used the loan proceeds solely to acquire luxury vehicles for resale. Rather, Defendants had used some of that money to purchase an interest in an airplane, to operate a boat rental business, and to operate a luxury automobile rental business. Vaccaro recently confirmed that he used the money for other purposes in written text messages, a true and correct copy of which is attached as **Exhibit 6**; and

c.   Defendants failed to pay the $20,833.33 interest payments due on the Note on February 1, 2026 and March 1, 2026, as required by the Note.

40.   The Note allows JSMFP XII, at its option upon any event of default, to accelerate all amounts of principal and interest due and owing under the Note, charge the default rate of interest of 24.9%, take possession of and sell the Collateral Vehicles and apply the net proceeds to the amounts due and owing under the Note, and seek a deficiency judgment. Ex. 3 ¶ 5.

41.   On January 28, 2026, JSMFP XII sent to Defendants a Notice of Default, advising Defendants that JSMFP XII was accelerating the Note as of February 1, 2026, and was charging the default rate of interest on all amounts due and owing under the Note after that date. JSMFP XII also notified Defendants that JSMFP XII intended to take possession of and sell the Collateral Vehicles for which Defendants had provided Certificates of Title and apply the net proceeds to the loan balance. A true and correct copy of the January 28, 2026 letter is attached as **Exhibit 7**.

42.   On February 11, 2026, conditioned upon Defendants' delivery of physical possession of three of the Collateral Vehicles to JSMFP XII and upon the parties entering into a

mutually acceptable payment plan for the entire balance of the Note, JSMFP XII agreed to forbear on the sale of Collateral Vehicles and filing of legal proceedings for a deficiency judgment, until February 27, 2026.  A true and correct copy of the February 11, 2026 letter is attached as **Exhibit 8**.  JSMFP also waived late fees under the Note and agreed not to charge the default rate of interest on the loan balance until after February 27, 2026.

43.     Defendants did not make any acceptable proposal for payment of the Note by February 27, 2026, and Defendants have not made any payment on or toward the Note after December of 2025.  Accordingly, the forbearance period expired.

**Defendants Defraud JSMFP out of $70,000 by Pledging/Selling a Fake Boat**

44.     In or about late December of 2025, Vaccaro approached JSMFP for another loan, claiming he needed $70,000 to pay certain bills. Vaccaro told JSMFP's representative that he would repay the $70,000 loan by late January of 2026, and that he would secure the loan with a boat supposedly owned by his company, High Society Sales and Rentals, LLC ("High Society").

45.     Based on Vaccaro's representations, JSMFP wired $70,000 to Flex Holdings' bank account at JPMorgan Chase Bank on December 29, 2025.  A true and correct copy of the wire confirmation is attached as **Exhibit 9**.

46.     At or about that same time, Vaccaro delivered to JSMFP the title to a 2019 42'9" Jaguar Marine vessel, with Vessel Identification Number JGR43191A119 (the "Boat"), which reflected the owner as High Society, one of Vaccaro's companies, to hold in escrow pending repayment.

47.     In or about late January of 2026, Vaccaro advised JSMFP that he could not repay the $70,000 loan, and he, for High Society, signed the title of the Boat over to JSMFP.  A true and correct copy of the signed conveyance of title provided to JSMFP is attached as **Exhibit 10**.

11

48. JSMFP proceeded to spend money to have the Boat titled in its name and demanded that Vaccaro and/or High Society deliver the Boat to JSMFP. They failed and refused to do so.

**Plaintiffs Learn that Defendants Pledged Non-Existent or Stolen Property for the Loans**

49. After Defendants defaulted on their obligations to Plaintiffs, Plaintiffs made demands on Defendants to turnover the collateral that Defendants pledged for the loans, including the Collateral Vehicles and the Boat.

50. As set forth above, Defendants never delivered the Boat to JSMFP. In JSMFP's efforts to locate and retrieve the Boat, JSMFP learned that the title documentation for the Boat is defective and, in fact, the Boat likely does not exist, as it does not match manufacturer identification and specifications.

51. In addition, over the course of several weeks in early 2026, Defendants voluntarily surrendered possession of and/or Plaintiffs lawfully repossessed from Defendants the following ten (10) Collateral Vehicles:

> 2023 Bentley Flying S with a VIN SCBBB6ZG5PC006314
> 2024 Rolls Royce Cullinan with a VIN SLATV4C02RU221162
> 2022 McLaren 720S VIN SBM14DCA6NW006448
> 2023 Mercedes Benz GLS 63A with a VIN 4JGFF8KE5NA829739
> 2023 Bentley Flying Spur with a VIN SCBBG6ZGXPC005273
> 2024 BMW 740I with a VIN WBA23EH03RCP56495
> 2022 Porsche 911 Turbo with a VIN WP0CD2A93NS261662
> 2023 Range Rover with a VIN SALKPBE72PA047324
> 2023 GMC Yukon XL with a VIN 1GKS1JKL2PR161625
> 2023 Cadillac Escalade with a VIN 1GYS3KKL8PR268412

(the "Surrendered Collateral Vehicles"), which JSMFP XII intended to repair, service, and sell to offset Defendants' debt under the Note.

52. JSMFP XII has learned that at least three of the Surrendered Collateral Vehicles (the Cadillac Escalade, GMC Yukon XL, and BMW 740I) have been reported as stolen. JSMFP XII has delivered the remaining Surrendered Collateral Vehicles to a dealer for inspection. To the

extent that those vehicles are not also reported stolen, or are otherwise saleable, JSMFP XII intends to sell them and offset the net proceeds against the amounts due and owing on the Note.

**Defendants and Their Affiliates Engaged in a Pattern of Fraudulent Activity**

53.     Plaintiffs are not the only victims of Defendants' fraud and other unlawful activity.

54.     On December 20, 2024, Vaccaro borrowed $100,000 from Oliver Trevena based on Vaccaro's representations that the money would be used for business purposes, that he would repay the loan by January 10, 2025, and that the loan would be collateralized with a 2020 Rolls Royce Wraith owned by Vaccaro or his affiliates.

55.     Trevena funded that loan to Vaccaro on December 20, 2024 via wire transfer.

56.     Upon information and belief, neither Vaccaro nor his affiliates recorded a title to the Rolls Royce reflecting Trevena as the lienholder as promised as an inducement to obtain the money.

57.     As of the date of this Complaint, almost eighteen (18) months after the loan matured, Trevena has not received any payments on the loan he made to Vaccaro nor will Vaccaro confirm that Defendants own the Rolls Royce that secures that loan to Trevena or release possession of that vehicle to Trevena so that Trevena can satisfy the debt, in whole or in part.

### COUNT I – FRAUD IN THE INDUCEMENT
### (By Plaintiffs Against All Defendants)

58.     Plaintiffs reallege and incorporate paragraphs 1 through 57, as if fully set forth herein.

59.     At all relevant times, Vaccaro was the controlling principal of Flex Holdings, Flex Rentals, and Diamond Brite, with actual and apparent authority to act on each entity's behalf. Vaccaro made the representations set forth above in the ordinary course of, and within the scope of his authority over, each entity's business, and for each entity's benefit. The loan proceeds induced by those representations were received and retained by Flex Holdings and Flex Rentals,

as alleged in paragraphs 27 and 38. Each entity thereby ratified and is bound by, and the fraud is imputed to each entity under, Florida agency law.

60.     Each entity Defendant participated in the scheme in an identified capacity: Flex Holdings received the April 1, 2024 wire of $500,000 and the December 29, 2025 wire of $70,000; Flex Rentals received the July 1, 2025 wire of $750,000; and each entity held or purported to hold title to collateral pledged to Plaintiffs. Vaccaro made each representation alleged herein within the scope of his authority over, and for the benefit of, each entity, which received and retained the resulting loan proceeds.

61.     For example, beginning in March 2024, and continuing through July 1, 2025, Vaccaro, for Defendants, made the following representations to the corporate representative for Plaintiffs, either in person, via telephone calls, or both:

a.   In March 2024, Vaccaro verbally promised that if JSMFP made the $500,000 loan he would only use the loan proceeds for the specific purpose of acquiring luxury vehicles for resale by his company, Flex Holdings;

b.   In April 2024, Vaccaro verbally represented that he and/or Flex Holdings lawfully owned vehicles, the titles to which had been amended to reflect JSMFP/SBV as a lienholder;

c.    Between April 1, 2025 and July 1, 2025, Vaccaro verbally represented that he had only used the $500,000 loaned by JSMFP for the sole purpose of acquiring luxury automobiles for resale;

d.   Between April 1, 2025 and July 1, 2025, Vaccaro verbally promised that if Plaintiffs loaned him and his affiliates an additional $750,000 and rolled the $500,000 prior loan balance into a new two-year loan, Defendants would only use the additional $750,000 loan proceeds for the sole purpose of acquiring luxury vehicles for resale;

14

e. Between April 1, 2025 and July 1, 2025, Vaccaro verbally promised that if Plaintiffs loaned him and his affiliates an additional $750,000 and rolled the $500,000 prior loan balance into a new two-year loan, Defendants would record titles to vehicles that Defendants lawfully owned with an aggregate liquidation value of $2,000,000 reflecting Plaintiffs as lienholders to secure the new $1,250,000 loan.

62. Those representations and promises were material to JSMFP XII's decision to loan $1,250,000 to Defendants on July 1, 2025.

63. These representations were false, as Defendants had not in fact used the $500,000 loan proceeds from the April 1, 2024 loan solely for the purpose of acquiring luxury vehicles for resale, and none of the Defendants lawfully owned the vehicles for which they had recorded liens in favor of SBV.

64. In addition, Defendants' promises to use the additional $750,000 loan proceeds solely to acquire luxury vehicles for resale and to place liens in favor of Plaintiffs on titles to vehicles that Defendants lawfully owned with an aggregate liquidation value of $2,000,000 were false and Defendants had no present intention of fulfilling those promises at the time they were made.

65. Defendants knew that these representations and promises were false when they were made and they made them with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to rely on them. At the time of the July 1, 2025 promises, Vaccaro: (a) already did not own or control the vehicles previously pledged, as he had admitted months earlier, *see* ¶ 28; (b) had already diverted prior loan proceeds to unrelated ventures, as he later admitted, *see* ¶ 39(b); and (c) was contemporaneously employing the identical false-collateral scheme against Oliver Trevena, *see* ¶¶ 54–57. These facts demonstrate Defendants' contemporaneous fraudulent

15

intent.

66.     Plaintiffs, at the time that these representations were made and when Plaintiffs loaned money to Defendants, were unaware of the falsity of Defendants' representations and believed them to be true.

67.     Plaintiffs reasonably relied on these false representations by loaning a total of $1,250,000 to Defendants.

68.     Had Plaintiffs known the true facts and Defendants' true intent, Plaintiffs would not have loaned any money to Defendants. Plaintiffs' reliance on Defendants' representations was justified.

69.     As a direct and proximate result of Defendants' intentional fraud, Plaintiffs have been damaged in an amount to be proven at trial.

70.     Defendants' conduct was willful, intentional and in conscious disregard of Plaintiffs' rights. Defendants had actual knowledge of the wrongfulness of their conduct and the high likelihood that injury or damage to Plaintiffs would result and intentionally pursued that course of conduct. Accordingly, Plaintiffs are entitled to recover punitive damages against Defendants.

### COUNT II – FRAUD IN THE INDUCEMENT
### (By JSMFP Against Flex Holdings and Vaccaro)

71.     Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

72.     In late December 2025, Vaccaro, on behalf of himself and Flex Holdings, made the following representations to the corporate representative for JSMFP, either in person, via telephone calls, or both:

a. Vaccaro verbally promised that if JSMFP made the $70,000 loan, he and Flex Holdings would only use the loan proceeds for business purposes;

b. Vaccaro verbally represented that his company, High Society, lawfully owned the Boat that secured the $70,000 loan;

c. Vaccaro signed over to JSMFP a title to the Boat, purporting to convey ownership in the Boat to JSMFP.

73. Those representations and promises were material to JSMFP's decision to loan $70,000 to Vaccaro and Flex Holdings on December 29, 2025.

74. These representations were false and Vaccaro and Flex Holdings had no intention to use the loan proceeds for business purposes when the representations were made or to provide valid security for the debt. Upon information and belief, and after learning that the title documentation for the Boat is defective, neither Vaccaro nor High Society owned the Boat, and they have not delivered the Boat to JSMFP after signing over title in January 2026.

75. Vaccaro and Flex Holdings knew that these representations and promises were false when they were made and they made them with the intent to defraud and deceive JSMFP and with the intent to induce JSMFP to rely on them.

76. JSMFP, at the time that these representations were made and when JSMFP loaned money to Vaccaro and Flex Holdings, was unaware of the falsity of these representations and believed them to be true.

77. JSMFP reasonably relied on these false representations by loaning $70,000 to Vaccaro and Flex Holdings.

78. Had JSMFP known the true facts and Vaccaro's and Flex Holdings' true intent, JSMFP would not have loaned any money to them. JSMFP's reliance on these representations was justified.

79. As a direct and proximate result of Vaccaro's and Flex Holdings' intentional fraud,

17

JSMFP has been damaged in an amount to be proven at trial.

80.     Vaccaro's and Flex Holdings' conduct was willful, intentional and in conscious disregard of JSMFP's rights. These Defendants had actual knowledge of the wrongfulness of their conduct and the high likelihood that injury or damage to JSMFP would result and intentionally pursued that course of conduct.  Accordingly, JSMFP is entitled to recover punitive damages against Vaccaro and Flex Holdings.

### COUNT III-BREACH OF PROMISSORY NOTE
### (JSMFP XII Against All Defendants)

81.     Plaintiff JSMFP XII incorporates the allegations contained in paragraphs 1 through 57 above, as though fully set forth herein. JSMFP XII is the holder of the Note entitled to enforce it under Fla. Stat. § 673.3011.

82.     On July 1, 2025, JSMFP XII and Defendants entered into the Loan Agreement, pursuant to which JSMFP XII agreed to lend, and Defendants agreed to borrow, the principal sum of $1,250,000 on the terms set forth therein.

83.     On July 1, 2025, in accordance with the Loan Agreement, Defendants each executed the Secured Promissory Note in favor of JSMFP XII, thereby becoming jointly and severally obligated as co-borrowers for repayment of the Note in accordance with its terms.

84.     The Note is a valid, binding, and enforceable obligation. JSMFP XII is the present holder and owner of the Note and is entitled to enforce it. JSMFP XII acquired all right, title, and interest in the underlying indebtedness and security by valid assignment from JSMFP and SBV on July 1, 2025, as alleged in paragraphs 32 and 37 above.

85.     Defendants have defaulted under the Note, including violations of promises and covenants in the Note, failure to provide the agreed collateral, and failure to pay the interest payment due on February 1, 2026 and March 1, 2026.

86.     JSMFP XII has performed all of its obligations under the Loan Agreement and the Note, and all conditions precedent to JSMFP XII's right to accelerate the indebtedness and bring this action have been performed. Specifically, JSMFP XII fully funded the loan and provided Defendants with the Notice of Default and notice of acceleration required under the Note. *See* Exs. 5, 7.

87.     Defendants have materially defaulted under the Note. Such defaults include, without limitation:

a.     Defendants' failure to deliver Certificates of Title to vehicles lawfully owned by Defendants, recording JSMFP XII as lienholder, with an aggregate liquidation value of $2,000,000, as required by the Loan Agreement and the Note. Ex. 2 ¶ 3; Ex. 3 ¶ 3.

b.     Defendants' failure to pay the monthly interest installments of $20,833.33 due on February 1, 2026 and March 1, 2026; and

c.     Defendants' breach of the affirmative and negative covenants of the Note and Loan Agreement, including the covenant restricting use of the loan proceeds.

88.     As a result of Defendants' defaults, and pursuant to the Note, JSMFP XII exercised its option to accelerate the loan, making the entire principal, all accrued interest, costs and attorneys' fees immediately due and owing.  JSMFP XII also exercised its right to charge default interest at the rate of 24.9%, beginning on March 1, 2026.

89.     There is now due, owing, and unpaid from Defendants to JSMFP XII the total amount of $1,474,862.64 on the Note, with interest accruing thereon at the rate of 24.9%.

90.     If and when JSMFP XII can sell any of the Surrendered Collateral Vehicles, JSMFP XII will apply the net proceeds of such sales to the amounts due and owing under the Note.

91.     The Note provides that the borrower shall pay all costs and expenses incurred by

the lender in collecting sums due under the Note after an Event of Default, including reasonable attorneys', witnesses', and court fees, whether or not legal proceedings are initiated. Ex. 3 ¶ 6. JSMFP XII has retained undersigned counsel and has obligated itself to pay a reasonable fee for counsel's services in this action and is therefore entitled to recover its attorneys' fees and costs.

### COUNT IV- CIVIL RICO (18 U.S.C. Sections 1962(c) and (d)) (By Plaintiffs against all Defendants)

92.     Plaintiffs hereby incorporate the allegations in paragraphs 1 through 57 above, as though fully set forth herein.

93.     Plaintiffs are each a "person" within the meaning of 18 U.S.C. Section 1961(3) and have sustained injury to their business or property as a result of the acts and conduct described herein.

94.     Defendants Vaccaro, Diamond Brite, Flex Holdings, and Flex Rentals, together with entities including High Society Sales and Rentals, LLC (collectively, the "Vaccaro Enterprise"), constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

95.     The Vaccaro Enterprise has a common purpose: to solicit and obtain money from private lenders through false representations regarding the borrowers' ownership of, and the existence and value of, vehicles and vessels pledged as collateral, and through the pledge of stolen, non-existent, or encumbered collateral.

96.     The members of the Vaccaro Enterprise are related to one another through Vaccaro, who directs and controls each member entity, and who used the entities interchangeably to receive loan proceeds, to hold or purport to hold title to collateral, and to give the scheme an appearance of legitimate, ongoing commercial operation. Loan proceeds solicited in the name of one member were wired to the accounts of others; titles were issued

in the names of various members; and the members functioned together as a continuing unit to accomplish the common fraudulent purpose.

97.     The Vaccaro Enterprise has existed for a sufficient period to pursue its purpose, operating from at least March 2024 through the present, with a structure and longevity beyond that necessary to commit any single predicate act.

98.     The Vaccaro Enterprise is engaged in, and its activities affect, interstate and foreign commerce, including through the interstate solicitation and wiring of funds, the interstate movement of motor vehicles and titles, and Defendant Diamond Brite's existence as a Connecticut limited liability company doing business in Florida.

99.     Each Defendant is a "person" distinct from the Vaccaro Enterprise. The Vaccaro Enterprise includes members and affiliates beyond any single Defendant, and each Defendant participated in the conduct of the Enterprise's affairs while maintaining a separate legal existence from the Enterprise as a whole.

100.     Section 1961(1) of RICO defines "racketeering activity" to include, among other things, acts indictable under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2314 (interstate transportation of stolen property), and 18 U.S.C. § 2315 (receipt of stolen property). Defendants, through the Vaccaro Enterprise, committed multiple such predicate acts.

101.     ***Wire fraud (18 U.S.C. § 1343)***. For the purpose of executing their scheme to obtain money by means of false representations and promises, Defendants caused the following interstate wire transfers, each made in reliance on Defendants' material misrepresentations described in paragraphs 23 through 57 above:

a. the $500,000 wired by JSMFP to Flex Holdings' Bank of America account on April

1, 2024, *see* Ex. 1, induced by Vaccaro's false representations regarding use of proceeds and ownership of collateral;

b. the $750,000 in additional principal wired by JSMFP XII to Flex Rentals' JPMorgan Chase account on July 1, 2025, *see* Ex. 5, induced by Vaccaro's false representations regarding prior use of proceeds, future use of proceeds, and the existence, ownership, and value of collateral;

c. the $100,000 wired by Oliver Trevena to Vaccaro on December 20, 2024, induced by Vaccaro's false representations regarding repayment and collateral; and

d. the $70,000 wired by JSMFP to Flex Holdings' JPMorgan Chase account on December 29, 2025 (Ex. 9), induced by Vaccaro's false representations regarding repayment and the existence and ownership of the Boat.

102.    ***Interstate transportation and receipt of stolen property (18 U.S.C. §§ 2314, 2315)***. Defendants transported, transmitted, transferred, received, possessed, and pledged in interstate commerce goods, wares, and merchandise of a value of $5,000 or more. Defendants knew, when they pledged the vehicles, that the collateral was likely stolen or fraudulently obtained, as evidenced by the altered vehicle identification numbers, odometer tampering, and title irregularities affecting the pledged vehicles, which were within Defendants' knowledge and control at the time of pledge. Specifically, Defendants pledged to JSMFP XII as collateral for the $1,250,000 loan motor vehicles—including at least the 2023 Cadillac Escalade, 2023 GMC Yukon XL, and 2024 BMW 740i—that have been reported stolen, each of which has a value substantially exceeding $5,000, and caused titles to such vehicles to move in interstate commerce.

103.    The predicate acts described above constitute a "pattern of racketeering

22

activity" within the meaning of 18 U.S.C. § 1961(5). The predicate acts are related: they share the same purpose (fraudulently obtaining loan proceeds), the same method of commission (false representations regarding collateral and use of proceeds, followed by pledge of non-existent, stolen, or encumbered collateral), the same principal participant (Vaccaro and the entities he controls), and similar victims (private lenders including Plaintiffs and Trevena).

104.    The predicate acts are continuous and pose a threat of continued criminal activity. They span a period of approximately two years, from March 2024 through early 2026, and were directed at multiple victims in separate transactions. The threat of continued activity is further demonstrated by Vaccaro's documented history of convictions for crimes of fraud and deception—including identity theft, first-degree larceny, criminal impersonation, issuing a bad check, fraudulent use of a credit card, and forgery, as alleged in paragraph 21 above—reflecting that fraudulent solicitation is Vaccaro's regular and ongoing manner of conducting business rather than an isolated occurrence.

105.    Each Defendant is employed by or associated with the Vaccaro Enterprise and conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c). Vaccaro directed the scheme; the entity Defendants received loan proceeds, held or purported to hold collateral, and lent the scheme its commercial appearance.

106.    Defendants knowingly and willfully conspired and agreed with one another, and with their affiliates and co-conspirators, to conduct and participate in the affairs of the Vaccaro Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Each Defendant agreed that at least two predicate acts of racketeering would be committed in furtherance of the scheme, and such acts were in fact committed. The agreement

is evidenced by the coordinated roles of the Defendants—the interchangeable use of the entity accounts to receive proceeds, the issuance of titles across the various entities, and Vaccaro's direction of each entity in furtherance of the common purpose.

107.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs have been injured in their business and property. JSMFP was injured by the wrongful inducement of the loans it funded, and JSMFP XII was injured by the wrongful inducement of the $1,250,000 loan it holds and the worthless or stolen collateral pledged to secure it. These injuries were proximately caused by the predicate acts of racketeering, which were the direct mechanism by which Defendants obtained Plaintiffs' funds.

108.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the damages they have sustained, together with the costs of suit and reasonable attorneys' fees.

## COUNT V- VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT
### (Fla. Stat. §§ 772.103 and 772.104)
### (By Plaintiffs Against All Defendants)

109.    Plaintiffs reallege and incorporate paragraphs 1 through 57 as though fully set forth herein.

110.    This Count is brought pursuant to the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101–772.19. The substantive prohibitions are set forth in Fla. Stat. § 772.103, and the private civil cause of action and remedies, including threefold actual damages, are provided by Fla. Stat. § 772.104.

111.    At all relevant times, the Vaccaro Enterprise constituted an "enterprise" within the meaning of Fla. Stat. § 772.102, in that they were a group of individuals and legal entities associated in fact for the common purpose of soliciting and obtaining money from private

24

lenders through false representations regarding the existence, ownership, and value of collateral, and through the pledge of stolen, non-existent, or encumbered collateral.

112. The Vaccaro Enterprise had a common purpose, relationships among those associated with it, and longevity sufficient to permit its members to pursue that purpose. Vaccaro directed and controlled each member entity and acted in concert with the member entities and with High Society. He used the member entities interchangeably to solicit loans, to receive and disburse loan proceeds, and to hold or purport to hold title to collateral, thereby giving the scheme the appearance of legitimate, ongoing commercial operation. Loan proceeds solicited in the name of one member were wired to the accounts of others; titles to purported collateral were issued in the names of various members; and the members functioned together as a continuing unit to accomplish the common fraudulent purpose.

113. The Vaccaro Enterprise has existed and operated as a continuing unit from at least March 2024 through the present, with a structure and longevity beyond that necessary to commit any single incident of criminal activity. Its activities affected trade or commerce within the State of Florida and in interstate commerce.

114. Each Defendant was employed by or associated with the Vaccaro Enterprise and is a person distinct from the Enterprise. The Enterprise includes members and affiliates, including High Society, beyond any single Defendant, and each Defendant participated in the conduct of the Enterprise's affairs while maintaining a separate legal existence from the Enterprise as a whole.

115. The conduct described below constitutes "criminal activity" within the meaning of Fla. Stat. § 772.102 under two independent prongs. First, under Fla. Stat. § 772.102(1)(a), "criminal activity" includes any crime chargeable by indictment or information under Chapter

812, relating to theft, robbery, and related crimes, and under Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, and credit card crimes. Second, under Fla. Stat. § 772.102(1)(b), "criminal activity" includes any conduct subject to indictment or information as a criminal offense listed in 18 U.S.C. § 1961(1)(A)–(D), which includes mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and interstate transportation and receipt of stolen property (18 U.S.C. §§ 2314, 2315), each as set forth in 18 U.S.C. § 1961(1)(B). Through the Vaccaro Enterprise, Defendants committed the following incidents of criminal activity under both prongs.

116. ***Theft by deception: the $500,000 loan***. In or about March and April 2024, Vaccaro, acting for himself and the Vaccaro Enterprise, obtained $500,000 from JSMFP by falsely representing that the proceeds would be used solely to acquire luxury vehicles for resale and that valid vehicle collateral owned by Vaccaro and/or Flex Holdings had been pledged, when in fact neither Vaccaro nor Flex Holdings owned or controlled the vehicles pledged and Vaccaro did not intend to limit his use of the funds as represented. This conduct constitutes theft in violation of Fla. Stat. § 812.014.

117. ***Theft by deception and communications fraud: the $1,250,000 loan***. Between April 1, 2025 and July 1, 2025, Vaccaro, acting for himself and the Vaccaro Enterprise, obtained an additional $750,000 (rolled with the prior balance into the $1,250,000 loan) from Plaintiffs by falsely representing that the prior $500,000 had been used solely to acquire vehicles for resale, that the new proceeds would likewise be so used, and that Defendants would pledge $2,000,000 in vehicle collateral that Defendants lawfully owned. Those representations were materially false when made. This conduct constitutes theft in violation of Fla. Stat. § 812.014, and, to the extent any such false representation was made by wire or

telephone, communications fraud in violation of Fla. Stat. § 817.034.

118. ***Theft by deception and communications fraud: the $70,000 boat loan***. On or about December 29, 2025, Vaccaro, acting for himself and the Vaccaro Enterprise, induced JSMFP to wire $70,000 to Flex Holdings by falsely representing that the loan would be repaid by late January 2026 and would be secured by a vessel purportedly owned by High Society. Vaccaro then caused High Society to sign over title to the vessel, but never delivered it and, upon information and belief based on the defective title documentation and the vessel's failure to match manufacturer identification and specifications, never owned the vessel, which does not exist. This conduct constitutes theft in violation of Fla. Stat. § 812.014, and, to the extent the representations were made by wire or telephone, communications fraud in violation of Fla. Stat. § 817.034.

119. ***Theft by deception: the Trevena loan***. In or about December 2024, Vaccaro, acting for himself and the Vaccaro Enterprise, induced Oliver Trevena, a lender unrelated to Plaintiffs, to wire $100,000 by falsely representing that the loan would be repaid by January 10, 2025 and would be secured by a 2020 Rolls Royce Wraith owned by Vaccaro or his affiliates, when in fact neither Vaccaro nor his affiliates perfected the promised lien and no payment has been made on the loan. This conduct constitutes theft in violation of Fla. Stat. § 812.014. This incident is pleaded to establish the pattern of criminal activity; Plaintiffs do not seek recovery in this action for the injury sustained by Trevena.

120. ***Dealing in stolen and worthless collateral***. At least some of the vehicles that Defendants pledged as collateral for Plaintiffs' loans have been reported stolen, and additional pledged vehicles suffer from title irregularities, altered vehicle identification numbers, and odometer tampering, rendering that collateral invalid or of no value. Defendants' pledge of

such collateral, with knowledge of its true character, in order to obtain and retain Plaintiffs' funds, constitutes theft in violation of Fla. Stat. § 812.014.

121.    The same conduct also constitutes "criminal activity" under Fla. Stat. § 772.102(1)(b) because it is subject to indictment as a criminal offense listed in 18 U.S.C. § 1961(1)(B), as follows:

a.    ***Wire fraud (18 U.S.C. § 1343)***. For the purpose of executing their scheme to obtain money by means of false representations, Defendants knowingly caused interstate wire communications to be transmitted, including (i) the $500,000 wired to Flex Holdings' Bank of America account on or about April 1, 2024; (ii) the $750,000 in additional principal wired to Flex Rentals' JPMorgan Chase account on or about July 1, 2025; and (iii) the $70,000 wired to Flex Holdings' JPMorgan Chase account on or about December 29, 2025, each induced by and in furtherance of Vaccaro's material misrepresentations described above.

b.    ***Interstate transportation and receipt of stolen property (18 U.S.C. §§ 2314, 2315)***. Defendants transported, transmitted, transferred, received, possessed, and pledged in interstate commerce motor vehicles of a value of $5,000 or more knowing the same to have been stolen, converted, or taken by fraud, as evidenced by the altered vehicle identification numbers, odometer tampering, and title irregularities affecting the pledged vehicles, and caused titles to such vehicles to move in interstate commerce, including through Defendant Diamond Brite's Connecticut nexus.

122.    The incidents of criminal activity described above constitute a "pattern of criminal activity" within the meaning of Fla. Stat. § 772.102. Defendants engaged in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission, or that are otherwise interrelated by distinguishing

28

characteristics, the last of which occurred within five years after a prior incident.

123. The incidents are related in that they share the same purpose (fraudulently obtaining loan proceeds), the same method of commission (false representations regarding ownership, existence, and value of collateral and use of proceeds, followed by the pledge of non-existent, stolen, or encumbered collateral), the same principal participant (Vaccaro and the entities he controls), and similar victims (private lenders, including Plaintiffs and Trevena).

124. The incidents are not isolated and do not arise out of a single contract or transaction. They consist of multiple, separate lending transactions occurring at distinct times — the April 2024 $500,000 loan, the July 2025 $1,250,000 loan, the December 2025 $70,000 boat loan, and the December 2024 Trevena loan — and were directed at more than one victim, including Trevena, who is not related to Plaintiffs by blood, marriage, ownership, direction, or control.

125. The pattern is continuous and poses a threat of continued criminal activity. The incidents span approximately two years, from March 2024 through early 2026, and were directed at multiple victims in separate transactions. The threat of continued activity is further demonstrated by Vaccaro's documented history of convictions for crimes of fraud and deception — including identity theft, first-degree larceny, criminal impersonation, issuing a bad check, fraudulent use of a credit card, and forgery, as alleged above — reflecting that fraudulent solicitation is Vaccaro's regular and ongoing manner of conducting business rather than an isolated occurrence.

126. In violation of Fla. Stat. § 772.103(3), Defendants, while employed by or associated with the Vaccaro Enterprise, conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of criminal activity described above.

29

Vaccaro directed the scheme; the entity Defendants solicited or received loan proceeds, held or purported to hold collateral, and lent the scheme its commercial appearance.

127.    In violation of Fla. Stat. § 772.103(4), Defendants conspired and endeavored, among themselves and with their affiliates and co-conspirators, to violate Fla. Stat. § 772.103(3). Each Defendant agreed and intended that at least two incidents of criminal activity would be committed in furtherance of the scheme to defraud Plaintiffs and others, and those incidents were in fact committed. The agreement is evidenced by the coordinated conduct of the Defendants, including the interchangeable use of the entity accounts to receive proceeds, the issuance of titles across the various entities, and Vaccaro's direction of each entity in furtherance of the common purpose.

128.    As a direct and proximate result of Defendants' violations of Fla. Stat. § 772.103, and by reason of the incidents of criminal activity described above, Plaintiffs have been injured in their business and property. JSMFP was injured by the fraudulent inducement of the loans it funded, and JSMFP XII was injured by the fraudulent inducement of the $1,250,000 loan it holds and the worthless, stolen, or non-existent collateral pledged to secure it. These injuries were directly caused by Defendants' criminal activity, which was the mechanism by which Defendants obtained Plaintiffs' funds, and Plaintiffs reasonably and detrimentally relied on Defendants' false representations in parting with those funds.

129.    Pursuant to Fla. Stat. § 772.104, Plaintiffs are entitled to recover threefold the actual damages they have sustained, but not less than the statutory minimum of $200, together with reasonable attorneys' fees and court costs in the trial and appellate courts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants, jointly and

severally:

A.      An Order awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury;

B.      An Order awarding treble damages in accordance with proof and in an amount consistent with applicable precedent;

C.      An Order awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

D.      An Order awarding pre-judgment and post-judgment interest at the maximum allowable legal rate on the foregoing sums;

E.      An Order awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees; and

F.      Such further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all claims and issues herein so triable.

Dated: June 30, 2026

Respectfully submitted,

NEIMAN MAYS FLOCH & ALMEIDA PLLC
By: /s/ Brandon S. Floch
Jeffrey A. Neiman
Florida Bar No. 544469
jneiman@nmfalawfirm.com
Brandon S. Floch
Florida Bar No.: 125218
bfloch@nmfalawfirm.com
1 SE 3rd Ave., Ste. 1800
Miami, FL 33131
Telephone: (305) 400-4269