# EXHIBIT 2

## LOAN AGREEMENT

THIS LOAN AGREEMENT (this "Agreement"), dated as of this 1 day of July, 2025, by and between **DIAMOND BRIGHT CAR CARE, LLC,** a Connecticut limited liability company, and **Corrado Vacarro,** an individual (collectively the "Borrower"), **Flex Auto Rentals, LLC,** a Florida limited liability company ("**Guarantor**"), and **JSMFP XII, LLC,** a Florida limited liability company (the "Lender").

## RECITALS

A.      Borrower has requested and Lender has agreed to make a secured loan to Borrower in the principal amount of *One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00)* (the "Loan") in connection with the Borrower's and Guarantor's commercial activities in the purchase and sale of luxury automobiles (the "Vehicles"), subject to the terms and conditions contained in this Agreement.

B.      Borrower, Guarantor, and Lender have negotiated the terms and conditions of, and wish to enter into, this Agreement in order to set forth the terms and conditions of the Loan.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth below, Borrower and Lender agree as follows:

1.      DEFINITIONS.   As used in this Agreement the terms listed below shall have the following meanings unless otherwise required by the context:

(a)      Code:   Means the Uniform Commercial Code (or any successor statute), as adopted and in force in Florida or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code (or any successor statute) of such state.  Any term used in this Agreement and in any financing statement filed in connection herewith which is defined in the Code and not otherwise defined in this Agreement or in any other Loan Document has the meaning given to the term in the Code.

(b)      Collateral: The Vehicles, including the titles or other documentation of ownership, and all rights associated with or flowing therefrom, and all modifications and amendments thereto.

(c)      Debt Service: All principal and interest due and payable under the Note.

(d)      Financing Statements:  The financing statements from Borrower to Lender to perfect Lender's security interest in the real and personal property described in the Mortgage.

(e)      GAAP: Generally accepted accounting principles consistently applied, as adopted in the United States, and as amended from time to time.

(f)      Loan: That certain secured promissory note in the amount of One Million Two Hundred Fifty Thousand AND 00/100 DOLLARS ($1,250,000.00), as evidenced by the Note and secured by the Mortgage, and other Loan Documents as provided herein.

(g)      Loan Documents:  Any and all documents evidencing, securing, or executed in connection with the Loan, including, without limitation, the Note and this Agreement.

1

(h)     Note: That certain Secured Promissory Note dated as of even date herewith from Borrower in favor of Lender in the principal amount of $1,250,000.00, as the same may be amended, restated, modified or replaced from time to time.

(i)     Person:  A natural person, a partnership, a joint venture, an unincorporated association, a limited liability company, a corporation, a trust, any other legal entity, or any Governmental Authority.

(j)     Vehicles:  Luxury automobiles purchased or held by Borrower or Guarantor in the normal course of their business, which, as approved by Lender, shall secure all of Borrower's obligations to Lender under this Agreement and the Note, as more specifically set forth herein.

2.     LOAN. Borrower has executed as of even date hereof and delivered to Lender's counsel the Note, which shall be funded only AFTER Lender receives the Collateral from Borrower. The Note will bear interest at the rate of twenty percent (20%) per annum, with a default rate of twenty-four and nine/tenths percent (24.9%) per annum. The Note will have a maturity date of June 30, 2027 (the "Maturity Date"). Borrower shall make interest only payments on the Note in the amount of $20,833.33 payable on the first day of each month beginning on August 1, 2025, and continuing until the Maturity Date. If Borrower fails to make any payment to Lender when due, Borrower shall pay a late fee to Lender in the amount of $1,000.00 per day until such payment is made in full or an Event of Default occurs under the Note. All amounts outstanding under the Note, including any accrued and unpaid interest, will be paid in full on the Maturity Date, by a single balloon payment. Borrower may not prepay any or all amounts due and owing under the Note at any time unless such payment includes the total Principal amount of the Note, plus all interest that would be due and owing under the Note for the full term of the Note if prepayment were not made, plus any costs or attorneys' fees incurred by the Lender in connection with such prepayment. If any Event of Default of this Agreement or the Note occurs, the Note shall immediately and without further notice accelerate, and all principal and accrued interest remaining due and owing shall become immediately due and payable in full without further notice or demand from Lender.

3.     SECURITY INTEREST/COLLATERAL: As security for Borrower's payment of all amounts due and owing under the Note and this Agreement, Borrower and/or Guarantor shall, at their sole expense, obtain and deliver to Lender original titles to Vehicles acquired or held by Borrower and/or Guarantor with an aggregate wholesale/liquidation value of $2,000,000.00, which such titles shall be approved by Lender in its sole discretion and shall identify and reflect Lender's lien on and against each Vehicle (the "Collateral"). If Lender does not approve any such title provided as Collateral, Borrower and/or Guarantor shall provide to Lender an alternative title that meets with Lender's satisfaction. Funding of this Note shall not occur until the Collateral Lender shall hold such Collateral in escrow pending payment in full by Borrower of this Note.  If, during the term of this Note and while Borrower is not in default of this Note, Borrower or Guarantor sells any Vehicle for which Lender holds the title as Collateral hereunder, Lender shall release the title to Borrower or Guarantor, along with any necessary documentation as to the release of Lender's lien on such title, and Borrower and/or Guarantor shall substitute and deliver to Lender a title to another comparable Vehicle, as approved by Lender. If, upon the Maturity Date, Borrower timely pays to Lender all amounts due and owing under this Agreement and on the Note, Lender shall release to Borrower and/or Guarantor the Collateral, along with any necessary documentation releasing Lender's liens on the Collateral. If, at any time, Borrower defaults on its obligations under this Note, Lender may, at its sole discretion, accelerate all amounts due and owing under the Loan and immediately take appropriate steps to repossess the Collateral and foreclose on Lender's liens thereon, including selling such Collateral on such terms as Lender deems desirable, and retain all proceeds thereof in full satisfaction of Borrower's obligations under the Note.

4.  EXPENSES:  Borrower shall pay to Lender immediately upon execution of this Agreement $10,000 for Lender's fees, expenses, and charges incurred in the procuring and making of the Loan and drafting the Loan Documents. Borrower shall also pay to Lender all fees incurred by Lender in connection with obtaining and/or recording titles to any Vehicles reflecting Lender as a lienholder on the title.

4.  WARRANTIES AND REPRESENTATIONS. Borrower represents and warrants (which representations and warranties shall be deemed continuing) as follows:

(a)  Status. Borrower is a limited liability company formed and in good standing in the State of Connecticut.

(b)  Compliance with Laws. To the best of its knowledge, Borrower is in compliance with all applicable laws, regulations, and ordinances governing Borrower, the Vehicles, and Borrower's business.

(c)  Accurate Information. All information now and hereafter furnished by Borrower to Lender is and will be true, correct and complete in all material respects. Any such information has and will accurately reflect the true condition, ownership, value, debts and liens of and against the Borrower, the Vehicles, and the Collateral.

(d)  Authority to Enter into Loan Documents. Borrower has full power and authority to enter into the Loan Documents and consummate the transactions contemplated hereby.

(e)  Validity of Loan Documents. The Loan Documents have been approved by those Persons having proper authority, and are in all respects legal, valid and binding according to their terms.

(f)  Conflicting Transactions of Borrower. The consummation of the transaction hereby contemplated and the performance of the obligations of Borrower under and by virtue of the Loan Documents will not result in any breach of, or constitute a default under, any contract, lease, loan or credit agreement, or other instrument to which Borrower is a party or by which Borrower may be bound or affected.

(g)  Pending Litigation. There are no actions, suits or proceedings pending against Borrower, or circumstances which could lead to such action, suits or proceedings against or affecting Borrower, or involving the validity or enforceability of any of the Loan Documents, before or by any Governmental Authority, except actions, suits and proceedings which have been specifically disclosed to and approved by Lender in writing; and Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority.

(h)  No Debt, Encumbrances, or Liens on Collateral:  None of the Vehicles that comprise or constitute the Collateral provided to Borrower to secure Borrower's obligations under the Note or this Agreement are subject to any claims of indebtedness, liens, security interests, or other encumbrances.

(i)  Sufficiency of Capital.  Borrower is not, and after consummation of this Agreement and after giving effect to all indebtedness incurred and liens created by Borrower in

3

connection with the Note and any other Loan Documents, Borrower will not be, insolvent within the meaning of 11 U.S.C. § 101, as in effect from time to time.

(j)     Indemnity. Borrower will indemnify Lender and its affiliates from and against any losses, liabilities, claims, damages, penalties or fines imposed upon, asserted or assessed against or incurred by Lender arising out of the inaccuracy or breach of any of the representations contained in this Agreement, the Note, or any other Loan Documents.

(k)     No Default.  Borrower is not in default in any material respect under any agreement or instrument to which it is a party or by which it may be bound that would individually or in the aggregate have a material adverse effect on the financial condition or business of Borrower.

5.     COVENANTS.  Borrower covenants and agrees with Lender as follows:

(a)     Ownership of Collateral.  Borrower certifies that it now owns, or will own in the future, outright and with no debt, liens, or other obligations to any Person, the Vehicles that constitute the Collateral provided to Lender for the Loan.  Borrower further certifies that it has paid or will pay in the future all monies due and owing in connection with the Collateral, including but not limited to, purchase price, titling fees, transportation costs, duties, taxes, levies and other charges of any nature.

(b)     Title to Collateral.  Borrower will, at its sole cost and expense, take all reasonable actions and complete any documentation necessary to obtain titles to Vehicles granted to Lender as Collateral under this Agreement and the Note that fully and accurately reflect Lender as the lienholder to and against such titles. Borrower shall cooperate with Lender as may be required to obtain and record such titles.  Borrower shall deliver to Lender the original titles, with appropriate lienholder status identified, for Lender to hold in escrow pending payment in full of the Note and any obligations under this Agreement. If Lender does not approve any such title provided as Collateral, Borrower shall provide to Lender an alternative title that meets with Lender's satisfaction. Funding of this Note shall not occur until the Collateral has been delivered to Lender. Lender shall hold such Collateral in escrow pending payment in full by Borrower of this Note.  If, during the term of this Note and while Borrower is not in default of this Note, Borrower sells any Vehicle for which Lender holds the title as Collateral hereunder, Lender shall release the title to Borrower, along with any necessary documentation as to the release of Lender's lien on such title, and Borrower shall substitute and deliver to Lender a title to another comparable Vehicle, as approved by Lender. If, upon the Maturity Date, Borrower timely pays all amounts due and owing on this Note to Lender, Lender shall release to Borrower the Collateral, along with any necessary documentation releasing Lender's liens on the Collateral. If, at any time, Borrower defaults on its obligations under this Note, Lender may, at its sole discretion, accelerate all amounts due and owing and immediately retitle in Lender's name all Vehicles for which Lender holds title as Collateral, sell such Vehicles on such terms as Lender deems desirable, and retain all proceeds thereof in full satisfaction of Borrower's obligations under this Note.

(c)     No Liens, Indebtedness or Encumbrances:  Borrower will not, during the term of this Agreement and until the Note is paid in full, permit any of the Collateral to become the subject of any other claim, indebtedness, liens, security interest, collateral or other encumbrance.  If any claim, indebtedness, lien, security interest or other collateral interest is asserted against any of the Collateral, Borrower shall, at its sole cost and expense, either (1) satisfy any such claim, indebtedness, lien or security interest and obtain any documents necessary to reflect the full and unconditional release of same, or (2) immediately provide to Lender substitute Collateral satisfactory to Lender.

4

(d)     No Transfer of Vehicles. Borrower shall not sell, lease, convey, transfer or encumber the Vehicles that comprise any of the Collateral in any way without the prior written consent of Lender, except as may be provided elsewhere herein or in the Note.

(e)     Insurance. Borrower shall procure, maintain, and keep in full force and effect during the term of this Agreement, appropriate and standard insurance coverage for any Vehicles that comprise the Collateral given by Borrower to Lender under this Agreement and the Note, with all premiums paid thereon. Borrower shall deliver to Lender the original (or a certified copy) of all policies of insurance required hereby, together with receipts or other evidence that the premiums therefor have been paid. The delivery of any insurance policy and any renewals thereof, shall constitute an assignment thereof to Lender, and Borrower hereby grants to Lender a security interest in all such policies, in all proceeds thereof and in all unearned premiums therefor. If any Vehicle that comprises the Collateral is damaged or destroyed while in Borrower's possession or under Borrower's control, Borrower will immediately provide notice of such damage to Lender and, at Lender's sole discretion, deliver to Lender substitute Collateral of equal or greater pre-damage value.

(f)     Further Assurances and Preservation of Security. Borrower will do all acts and execute all documents for the better and more effective carrying out of the intent and purposes of this Agreement, as Lender shall reasonably require from time to time, and will do such other acts necessary or desirable to preserve and protect the collateral at any time securing or intending to secure the Note, as Lender may require.

(g)     Notice of Litigation. Borrower shall promptly give Lender written notice of (a) a judgment entered against Borrower, or (b) the commencement of any action, suit, claim, counterclaim or proceeding against or investigation of Borrower which, if adversely determined, would materially adversely affect the financial condition of Borrower, the Vehicles, or the Collateral, or which questions the validity of this Agreement, the Note, or the Collateral, or any other actions or agreements taken or to be made pursuant to any of the foregoing.

(h)     Notice of Default. Borrower shall promptly give Lender written notice of any act of default under any agreement with Lender or under any other contract to which Borrower is a party and of any acceleration of indebtedness caused thereby which would materially adversely affect the financial condition of Borrower, the Vehicles, or the Collateral.

(i)     No Assignment.   Borrower shall not assign this Agreement, and any such assignment is void and of no effect.  Lender may assign this Agreement and any other Agreements contemplated hereby, and all of its rights hereunder and thereunder, and all provisions of this Agreement shall continue to apply to the Loan.  Lender agrees to notify Borrower of any such assignment.

(j)     Indemnification. Borrower hereby indemnifies and holds Lender, its members, managers, officers, agents, and attorneys harmless from and against any liability, loss, expenses, damage of any nature, and claims arising in connection with the Loan, the Vehicles, and the Collateral.

6.     DEFAULT.  Upon the occurrence and continuance of any of the following events beyond the expiration of any applicable cure period (each an "Event of Default" and collectively, the "Events of Default"), Lender may at its option exercise any of its remedies set forth herein:

(a)     Borrower fails to perform any obligation under this Agreement or the Note, when due, whether on the scheduled due date or upon acceleration, maturity or otherwise; or

5

(b)     Borrower fails to perform any other obligation under the Loan Documents; or

(c)     Borrower fails to pay or perform any other obligation, liability or indebtedness to any other party; or

(d)     A "Default" or an "Event of Default" (as defined in each respective document) occurs (beyond any applicable notice and cure period) under any of the Loan Documents; or

(e)     If any warranty or representation made by Borrower in this Agreement or pursuant to the terms hereof shall at any time be false or misleading in any material respect, or if any Borrower shall fail to keep, observe or perform any of the terms, covenants, representations or warranties contained in this Agreement, the Note, the Mortgage, the Security Agreement or any other document given in connection with the Loan, or is unwilling to meet its obligations thereunder; or

(f)     A change of control of Borrower; or

(g)     Borrower becomes the subject of any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships; or

(h)     The entry of a judgment against Borrower which Lender deems to be of a material nature, in Lender's sole discretion; or

(i)     The seizure or forfeiture of, or the issuance of any writ of possession, garnishment or attachment, or any turnover order for any property of Borrower, including the Collateral; or

(j)     The determination by Lender that it is insecure for any reason; or

(k)     A material alteration in the financial condition of Borrower is made without the prior written consent of Lender; or

(l)     Lender determines in good faith, in its sole discretion, that the prospects for payment or performance of Borrower's obligations under the Loan Documents are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise; or

(m)     If Borrower defaults under any loan, contract or agreement extended by Lender or any of its affiliates, as the same may be amended, restated, modified or replaced from time to time; or

(n)     The failure of Borrower to timely satisfy any of the covenants as required in Section 5 above.

7.     REMEDIES OF LENDER.  Upon the happening of an Event of Default, then Lender may, at its option, upon written notice to Borrower:

(a)     Cancel this Agreement;

(b)     Commence an appropriate legal or equitable action to enforce performance of this Agreement;

6

(c)     Accelerate the payment of the Note and the Loan and any other sums secured by the Collateral;

(d)     Provide a 10 day written notice to Borrower that Lender intends to repossess any Vehicles for which Lender is reflected on the title as the lienholder, and if such default is not cured within such 10 days, take possession of the Vehicles and sell them at a public or private sale, as determined by Lender, and retain all proceeds thereof to be used toward satisfaction of Borrower's obligations under the Note and this Agreement;

(e)     Commence an appropriate legal action for any deficiency remaining after the repossession and sale of the Collateral;

(f)     Exercise any other rights or remedies Lender may have under the Loan Documents referred to in this Agreement or executed in connection with the Loan or which may be available under applicable law.

8.     GENERAL TERMS.  The following shall be applicable throughout the period of this Agreement or thereafter as provided herein:

(a)     Rights of Third Parties.  All conditions of the Lender hereunder are imposed solely and exclusively for the benefit of Lender and its successors and assigns, and no other Person shall have standing to require satisfaction of such conditions or be entitled to assume that Lender will make advances in the absence of strict compliance with any or all thereof, and no other Person shall, under any circumstances, be deemed to be a beneficiary of this Agreement or the Loan Documents, any provisions of which may be freely waived in whole or in part by the Lender at any time if, in its sole discretion, it deems it desirable to do so.

(b)     Borrower is not Lender's Agent.  Nothing in this Agreement, the Note, the Security Agreement, the Mortgage or any other Loan Document shall be construed to make Borrower Lender's agent for any purpose whatsoever, or Borrower and Lender partners, or joint or co-venturers, and the relationship of the parties shall, at all times, be that of debtor and creditor.

(c)     Loan Expense/Enforcement Expense. Borrower agrees to pay to Lender on demand all reasonable costs and expenses incurred by Lender in seeking to enforce Lender's rights and remedies under this Agreement and the Note, including court costs, costs of alternative dispute resolution, litigation expenses, expert expenses, and reasonable attorneys' fees and costs, whether or not suit is filed or other proceedings are initiated hereon.

(d)     Evidence of Satisfaction of Conditions.  Lender shall, at all times, be free independently to establish to its good faith and satisfaction, and in its absolute discretion, the existence or nonexistence of a fact or facts which are disclosed in documents or other evidence required by the terms of this Agreement.

(e)     Headings.  The headings of the sections, paragraphs and subdivisions of this Agreement are for the convenience of reference only, and shall not limit or otherwise affect any of the terms hereof.

(f)     Invalid Provisions to Affect No Others.  If performance of any provision hereof or any transaction related hereto is limited by law, then the obligation to be performed shall be reduced accordingly; and if any clause or provision herein contained operates or would prospectively operate to

invalidate this Agreement in part, then the invalid part of said clause or provision only shall be held for naught, as though not contained herein, and the remainder of this Agreement shall remain operative and in full force and effect.

(g)    Application of Interest to Reduce Principal Sums Due.  In the event that any charge, interest or late charge is above the maximum rate provided by law, then any excess amount over the lawful rate shall be applied by Lender to reduce the principal sum of the Loan or any other amounts due Lender hereunder.

(h)    Governing Law and Exclusive Jurisdiction.  The laws of the State of Florida shall govern the interpretation and enforcement of this Agreement.  The parties agree that any dispute arising under this Agreement or the Note shall be within the exclusive jurisdiction of the state and federal courts located in Miami, Florida, and the parties consent to the exercise of personal and subject matter jurisdiction by such courts. Borrower waives personal service of any and all process upon it and consents that all such service of process be made by certified or registered mail directed to such Borrower, and service so made shall be deemed to be completed upon actual receipt thereof

(i)    Number and Gender.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the others and shall apply jointly and severally.

(j)    Waiver.  If Lender shall waive any provisions of the Loan Documents, or shall fail to enforce any of the conditions or provisions of this Agreement, such waiver shall not be deemed to be a continuing waiver and shall never be construed as such; and Lender shall thereafter have the right to insist upon the enforcement of such conditions or provisions.  Furthermore, no provision of this Agreement shall be amended, waived, modified, discharged or terminated, except by instrument in writing signed by the parties hereto.

(k)    Notices.  All notices from the Borrower to Lender and Lender to Borrower required or permitted by any provision of this Agreement shall be in writing and sent by registered or certified mail or nationally recognized overnight delivery service and addressed as follows:

TO LENDER:              1000 Biscayne Blvd., Unit 1601,
                        Miami, Florida 33132
                        Attention: Amit Raizada

TO BORROWER:            DIAMOND BRIGHT CAR CARE, LLC
                        920 W. Main Street
                        New Britain, CT 06053
                        Attn:  Corrado Vaccaro

                        Corrado Vacarro
                        1040 Biscayne Blvd, unit 1001
                        Miami, FL 33132

                        Flex Auto Rentals, LLC
                        3411 NW 72nd Ave, Suite A
                        Miami, FL 33122
                        Attn:  Corrado Vaccaro

Such addresses may be changed by such notice to the other party.  Notice shall be deemed given on the date of its deposit in the United States Mail and, unless sooner actually received, shall be deemed received by the party to whom it is addressed on the third calendar day following the date on which said notice is deposited in the mail, or if a courier system is used, on the date of delivery of the notice.

        (l)     Successors and Assigns.  This Agreement shall inure to the benefit of and be binding on the parties hereto and their heirs, legal representatives, successors and assigns; but nothing herein shall authorize the assignment hereof by the Borrower.

        (m)     Counterparts, Facsimiles.  This Agreement may be executed in counterparts. Each executed counterpart of this Agreement will constitute an original document, and all executed counterparts, together, will constitute the same agreement. Any counterpart evidencing signature by one party that is delivered by facsimile by such party to the other party hereto shall be binding on the sending party when such facsimile is sent, and such sending party shall within ten (10) days thereafter deliver to the other parties a hard copy of such executed counterpart containing the original signature of such party or its authorized representative.

        (n)     WAIVER OF JURY TRIAL.  LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT TO BE CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

        **IN WITNESS WHEREOF**, Borrower and Lender have caused this Agreement to be executed on the date first above written.

**BORROWER:**

DIAMNOD BRITE CAR CARE, LLC

By_____
Its Authorized Signer

Corrado Vacarro

By_____
Corrado Vacarro

**GUARANTOR:**

FLEX AUTO RENTALS, LLC

By_____
Its Authorized Signer

9

**LENDER:**

JSMFP XII, LLC,

By: _____
Its Authorized Signer